## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

HRB RESOURCES LLC,

         Plaintiff,

vs.                              CASE NO.:

JOHN PHELPS,

         Defendant.

_____ /

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff HRB Resources LLC ("H&R Block") files this Verified Complaint for Injunctive Relief and Damages against Defendant John Phelps ("Phelps"), and alleges as follows:

## INTRODUCTION

This action involves a former H&R Block tax advisor who has breached and is breaching restrictive covenants in his H&R Block employment agreement. H&R Block employed Phelps as a tax advisor at a Block Advisors tax office in Tallahassee, Florida. As a condition of his employment, Phelps signed an employment agreement containing, among other things, post-employment restrictive covenants that prohibit him from soliciting and preparing tax returns for certain specifically-defined H&R Block clients. During his employment with H&R Block, H&R Block provided Phelps with access to its most sensitive information about H&R Block's clients and business operations. These confidential, proprietary, and

trade secret materials include client lists, detailed information about its clients, and information about H&R Block's methods, training, and marketing strategies. Notwithstanding Phelps's contractual and statutory duties to H&R Block, Phelps embarked on a course of improper activities in violation of both his employment agreement and his statutory obligations.

On May 2, 2023 – the day before his H&R Block employment ended – Phelps intentionally misappropriated H&R Block client contact information so he could solicit H&R Block clients in direct violation of the restrictive covenants in his employment agreement. Thereafter, Phelps did just that. He directly solicited H&R Block clients to have their tax returns prepared by him instead of H&R Block. Phelps's contractual breaches and statutory violations, including his misappropriation and use of H&R Block's confidential and proprietary information, are causing irreparable injury to H&R Block and depriving H&R Block of its opportunities to service its clients.

Time is of the essence, as preparation for the 2024 tax season is underway. H&R Block seeks a preliminary injunction to enjoin Phelps's unlawful conduct, and seeks damages to compensate H&R Block for financial losses that may have already occurred. The specific details surrounding Phelps's improper acts are detailed below.

## PARTIES

1.      Plaintiff HRB Resources LLC is a limited liability company.  The sole member of HRB Resources LLC is H&R Block Management, LLC, a limited liability company.  The sole member of H&R Block Management, LLC, is H&R Block Group, Inc., a corporation authorized and existing under Delaware law with its principal place of business in Kansas City, Missouri.  Thus, HRB Resources LLC is a citizen of Delaware and Missouri.

2.      Defendant Phelps is a resident of Tallahassee, Florida.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) because H&R Block has asserted a claim for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq*., and pursuant to 29 U.S.C. § 1367 (supplemental jurisdiction) because H&R Block's pendant state law claims are so related to the federal claim that they form part of the same case or controversy.

4.      This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship) because there is complete diversity and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.      Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to H&R Block's claims occurred in the Northern District of Florida.

## FACTS

### Background

6.      H&R Block is engaged in the highly competitive business of providing tax preparation and related services to companies and individuals throughout the United States.   It operates under the brand names "H&R Block" and "Block Advisors."

7.      In the tax preparation business, H&R Block has distinguished itself from its competitors by providing superior service to its clients and through its unique training, methods, marketing, and sales practices, as well as the strength of its existing client relationships.

8.      H&R Block employs tax advisors (also referred to as "tax preparers" and "tax professionals") for each tax season, which usually runs from January 1 of a given year through the tax filing deadline that year (usually on or soon after April 15).   Tax advisors for Block Advisors work year-round to, among other things, handle the preparation of tax returns filed during tax season and after extensions, and to provide other alternative products, such as bookkeeping.

9.    H&R Block employs its tax advisors pursuant to standardized written employment agreements that H&R Block and the tax advisors enter into annually.

10.    H&R Block has invested considerable resources in the training of its tax advisors, who are the face of the company to its clients at H&R Block's many field offices.   H&R Block provides its tax advisors with unique and extensive specialized training before each tax season.   With and through the goodwill and resources of H&R Block, these tax advisors form substantial relationships with H&R Block's clients.

11.    H&R Block has invested significant resources to develop its client base, including its client data, and the goodwill toward its expertise, reputation, and services.

12.    H&R Block has developed and maintains client databases containing critical information for millions of clients, including clients in its Block Advisors South East District.

13.    H&R Block's databases contain unique compilations of confidential and proprietary business information, such as:

A.    the names, addresses (physical and e-mail), and telephone numbers of each client and prospective client of H&R Block;

B.    the years each client has used H&R Block for tax services, together with the types of returns the client filed, and the schedules required for the returns;

C.    the personal details relating to each client's tax returns, such as investments generating taxable income, occupation, employment addresses, and information concerning spouses and children;

D.    the particular fees charged to each client; and

E.    other information pertinent to serving each client and prospective client.

14.    H&R Block's client databases are extremely valuable assets and were compiled with the expenditure of significant time, effort, and resources over many years.

15.    The compilation of information contained in these databases is not generally known or readily ascertainable and, as such, could easily be exploited by H&R Block's competitors to allow them to gain a competitive advantage over H&R Block.

16.    To protect its confidential information as well as its client relationships, H&R Block has adopted company-wide written policies and procedures restricting the disclosure or use of the information other than for official company purposes.

17.    To further protect its confidential information and its client relationships, H&R Block requires its key personnel—including its tax advisors like Phelps—to enter into employment agreements with restrictive covenants to protect against the disclosure or use of the information other than for official company purposes and various other forms of unfair competition during and post-employment.

**Phelps's Employment and Violation of His Employment Agreement**

18.    H&R Block employed Phelps as a tax professional or tax advisor from 2002 to 2023. Before each tax season, Phelps entered into an employment agreement with H&R Block.

19.    For the 2023 tax season, Phelps entered into his Block Advisors Tax Advisor Employment Agreement with H&R Block on August 26, 2022 (the "Agreement"). A true and accurate copy of the Agreement is attached hereto as **"Exhibit 1."**

20.    In Section 8(a) of the Agreement, Phelps agreed, both for the term of his employment and after, not to directly or indirectly:

(i) misappropriate, make copies of, or remove from H&R Block's offices any Confidential Business Information of H&R Block, (ii) make known, divulge, or communicate to any person or entity any Confidential Business Information of H&R Block, or (iii) use any Confidential Business Information of H&R Block for any reason other than as necessary to enable Associate to properly perform Associate's duties.

Ex. 1, § 8(a).

21.    Section 8(c) of the Agreement defines "Confidential Business Information" to include, among other things, H&R Block's client lists and specific information pertaining to H&R Block's clients. *Id*. at § 8(c).

22.    In the Agreement, Phelps agreed to the following restrictive covenants during and after his employment:

> Associate agrees that during the term of Associate's employment Associate will not directly or indirectly:
>
> a)  Compete with the Company at any location or in any capacity by: (i) preparing or electronically filing tax returns, providing Bookkeeping Services, or providing any other product or service that the Company offers in the Associate's district of employment; or (ii) soliciting or accepting any of the Company's clients for the aforementioned services; this covenant is referred to hereinafter as Associate's **"Services Limitation"** [covenant]; or …[1]
>
> ***
>
> The following restrictive covenants are agreed to subject to any state-specific modifications that apply under Section 11 below:
>
> Associate covenants that for two (2) years following the cessation of Associate's employment hereunder for any reason (the "Restricted Period"), Associate will not directly or indirectly:

---

[1]  The Agreement further provides that "[i]n the event Associate breaches Section 9 of this Agreement, it addition to and not in lieu of equitable relief to prevent such further breach (such as an injunction or order of specific performance), to address harm incurred prior to issuance of injunctive relief Associate will pay to Company a lump sum of $1,000 per tax season of employment up to a $10,000 maximum (a partial tax season will be counted as a tax season)." Ex. 1, § 12(c).

(1) Provide any of the following services to any Company Client: (i) preparation of tax returns; (ii) electronic filing of tax returns; (iii) Bookkeeping Services; or (iv) any Alternative Products or Services; this covenant is referred to herein as the Associate's "**Client Non-service**" covenant; or

(2) Solicit Company Clients for the purpose of offering to such clients: (i) tax return preparation services; (ii) electronic filing of tax returns; (iii) Bookkeeping Services; or (iv) any Alternative Products or Services; this covenant is referred to herein as the Associate's "**Client Non-solicitation**" covenant.

*Id.* at §§ 9(a) and 10(a) (emphasis in original).

23.    The Agreement narrowly defines "Company Clients" as:

[E]very person or entity whose federal or state tax return was prepared or electronically transmitted by Associate, or for whom Associate provided Bookkeeping Services or any Alternative Products or Services, during the term of this Agreement or during any period of time in which Associate was employed by the Company or an affiliate during the twelve (12) months immediately preceding the effective date of this Agreement.

*Id.* at § 10(c).

24.    The Agreement further defines "Alternative Products or Services" as "products or services, other than the preparation or electronic filing of tax returns or Bookkeeping Services, that the Company provides to clients within Associate's district of employment." *Id.* at § 10(d).

25.    The restrictive covenants in the Agreement are enforceable in that they protect H&R Block's valid and legitimate business interests, the restrictions are

9

reasonably limited to specifically-defined H&R Block "Company Clients," they cover a reasonable time period, and they are supported by adequate consideration under Florida law.

26.    During his employment with H&R Block, Phelps received unique and specialized training; learned about H&R Block's business methods, sales practices, and marketing strategies; and formed substantial relationships with the numerous clients for whom he prepared tax returns.  He also regularly accessed and used H&R Block's confidential client databases.

27.    During the 2023 tax season, Phelps worked at the Block Advisors tax office at 1350 Market Street, Suite 116, Tallahassee, Florida 32312.  He prepared 512 tax returns for H&R Block Company Clients during the 2023 tax season.  Phelps was known at H&R Block as a "high writer," meaning he prepared tax returns for a large H&R Block client base.

28.    On April 17, 2023, Phelps engaged in an open verbal altercation with a client at the H&R Block Tallahassee office where he worked.  Two H&R Block managers heard him yelling at a client.  Thereafter, H&R Block opened an Associate Relations Center ("ARC") case to investigate the incident and take appropriate action.  On May 2, 2023, Phelps – clearly anticipating that H&R Block would terminate his employment imminently – forwarded from his H&R Block email

account to his personal email account numerous emails containing confidential client information of H&R Block and client documents.

29.    On the next day, May 3, 2023, H&R Block terminated Phelps's employment for his improper conduct towards the client.

30.    Since his departure from H&R Block, Phelps has been actively soliciting H&R Block Company Clients for the purpose of providing them with tax preparation services.  For instance, On May 19, 2023, Phelps called H&R Block client Paula C. from his personal cell phone in order to solicit her to have her tax returns prepared by Phelps instead of H&R Block.

31.    Thereafter, on June 12, 2023, H&R Block's counsel sent Phelps a demand letter requesting that he cease and desist his contractual violations.  A true and accurate copy of the letter is attached as **"Exhibit 2."**

32.    Phelps failed to respond to H&R Block's letter and instead continued to solicit H&R Block Company Clients in violation of his Agreement.  On October 2, 2023, H&R Block client Carl K. called H&R Block Team Leader Lynne Rahman and informed her that Phelps had called him and asked to meet with him to sign some forms and settle up the cost for Phelps's preparation of his tax return.  Phelps tried to persuade Carl K. to leave H&R Block and work with Phelps, telling him Phelps's prices were comparable to H&R Block's prices.  Carl K. also reported that Phelps provided bookkeeping services for his business, but that Phelps told him to

pay with checks made out to John Phelps personally instead of making payment to H&R Block. Thus, Phelps was providing, and personally accepting payment for, bookkeeping services on the side while employed by H&R Block.

33.     Phelps misappropriated confidential and trade secret H&R Block client information and has been unlawfully soliciting H&R Block's Company Clients in violation of his Agreement.

34.     As of the date of this Complaint, Phelps has not responded to H&R Block's letter and continues to solicit H&R Block Company Clients in violation of his Agreement.

35.     Phelps will continue to act in breach of his contractual obligations to H&R Block.

36.     Phelps's actions are in direct violation of his Agreement with H&R Block.

37.     H&R Block has retained undersigned counsel to enforce its rights pursuant to the Agreement, and is obligated to pay reasonable attorneys' fees for counsel's services.

## <u>COUNT I</u>
### (Breach of the Agreement)

38.     H&R Block adopts and incorporates all of its preceding allegations as if fully set forth herein.

39.     The Agreement is a valid and enforceable contract.

40.    The restrictive covenants in the Agreement are reasonable, valid, and tailored to reasonably protect H&R Block's confidential business information and trade secrets as well as its valuable client relationships.

41.    The provisions of the Agreement are designed to protect the significant investments H&R Block has made in its business operations, training, marketing efforts, and in its substantial client relationships.

42.    H&R Block has performed each and every obligation and condition required of it pursuant to the Agreement.

43.    Phelps has taken and used confidential business information and trade secrets from H&R Block and has solicited and will continue to solicit tax return preparation services to numerous H&R Block Company Clients.

44.    Phelps has failed to perform his obligations under the Agreement and, therefore, has materially breached the terms and conditions of the Agreement. Specifically, Phelps has breached Sections 8, 9, and 10 of the Agreement.

45.    H&R Block has suffered and likely will continue to suffer actual and threatened injuries as a direct result of Phelps's breaches, including, without limitation, the loss of its confidential and proprietary information, trade secrets, clients, business reputation, market share, profits, and goodwill.

46.    H&R Block has suffered or will suffer monetary damages as a result of Phelps's solicitation of H&R Block's clients, in violation of the Agreement.

WHEREFORE, H&R Block demands that:

A.    Phelps be enjoined from breaching any and all of his contractual obligations to H&R Block under the Agreement; and

B.    An award be entered against Phelps for compensatory damages (including but not limited to $10,000 in liquidated damages as set forth in Section 12(c) of the Agreement), attorneys' fees, pre-award interest, and other remedies to the fullest extent permissible under applicable law.

## COUNT II
### (Misappropriation of Trade Secrets under the Florida Uniform Trade Secrets Act)

47.    H&R Block adopts and incorporates all of its preceding allegations as if fully set forth herein.

48.    H&R Block's client lists and client information enable it to obtain an advantage over its competitors who do not know or use this information.

49.    This confidential and proprietary business information of H&R Block derives independent economic value, actual or potential, from not being generally known and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure and are trade secrets belonging to H&R Block within the meaning of the Florida Uniform Trade Secrets Act.  Fla. Stat. § 688.001, *et seq.*

50.    H&R Block uses reasonable efforts to maintain the secrecy of its confidential and proprietary business information and trade secrets.

51.    H&R Block's confidential and proprietary business information and trade secrets are not readily ascertainable by the public.

52.    Phelps took and used H&R Block's confidential and proprietary business information and trade secrets, including its client information, to unlawfully compete with H&R Block.

53.    Phelps acquired H&R Block's confidential and proprietary business information and trade secrets through a breach of confidential relationship between Phelps and H&R Block.

54.    By obtaining, possessing, and using the confidential information, Phelps has misappropriated and unlawfully used H&R Block's trade secrets.

55.    Phelps's conduct violated Florida law.

56.    H&R Block has been damaged by Phelps's misappropriation and unlawful use of its trade secrets.

57.    Phelps's violations have been willful and malicious within the meaning of the Florida Uniform Trade Secrets Act.

58.    H&R Block's competitive advantage in the marketplace is critically dependent on H&R Block's ability to maintain the confidentiality of its trade secrets.

H&R Block has been irreparably harmed and will continue to be irreparably harmed by Phelps's misappropriation of its trade secrets.

59.    If not enjoined, Phelps will continue to misappropriate and use H&R Block's trade secrets for his benefit and to H&R Block's detriment.

WHEREFORE, H&R Block demands that:

A.    An injunction be entered prohibiting Phelps, and all persons acting in concert or participation with him, from using or disclosing trade secrets of H&R Block, including client lists and specific information pertaining to H&R Block's clients;

B.    An award be entered against Phelps for damages for actual loss caused by the misappropriation of H&R Block's trade secrets and damages for unjust enrichment caused by the misappropriation of H&R Block's trade secrets that are not addressed in computing damages for actual loss;

C.    An award be entered against Phelps for exemplary damages for willful and malicious misappropriation of trade secrets; and

D.    An award be entered against Phelps for attorneys' fees, pre-award interest, and other remedies to the fullest extent permissible under applicable law.

## COUNT III
### (Misappropriation of Trade Secrets
### under the Federal Defend Trade Secrets Act)

60.    H&R Block adopts and incorporates all of its preceding allegations as if fully set forth herein.

61.    The confidential and proprietary business information of H&R Block, as detailed herein, constitutes trade secrets belonging to H&R Block within the meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.*

62.    H&R Block's trade secrets and confidential information are not readily ascertainable by the public, and H&R Block has taken reasonable steps to protect the secrecy of that information.

63.    H&R Block derives independent economic value from its trade secrets and confidential business information by virtue of its secrecy.

64.    Phelps had access to, and, on information and belief, obtained and continues to possess and use, H&R Block's confidential information and trade secrets, including, but not limited to, H&R Block's client lists and other detailed, client-specific data and information.

65.    Phelps was aware of his obligations to maintain the confidentiality of H&R Block's trade secrets and confidential business information.

66.    Phelps, in violation of the Defend Trade Secrets Act, has taken and made use of this information to H&R Block's detriment.

67.     Phelps's violations have been willful and malicious within the meaning of the Defend Trade Secrets Act.

68.     H&R Block's competitive advantage in the marketplace is critically dependent on H&R Block's ability to maintain the confidentiality of its trade secrets. H&R Block has been irreparably harmed and will continue to be irreparably harmed by Phelps's misappropriation of its trade secrets.

69.     If not enjoined, Phelps will continue to misappropriate and use H&R Block's trade secrets for his benefit and to H&R Block's detriment.

WHEREFORE, H&R Block demands that:

A.     An injunction be entered prohibiting Phelps, and all persons acting in concert or participation with him, from using or disclosing trade secrets of H&R Block, including client lists and specific information pertaining to H&R Block's clients;

B.     An award be entered against Phelps for damages for actual loss caused by the misappropriation of H&R Block's trade secrets and damages for unjust enrichment caused by the misappropriation of H&R Block's trade secrets that are not addressed in computing damages for actual loss;

C.     An award be entered against Phelps for exemplary damages for willful and malicious misappropriation of trade secrets; and

D.    An award be entered against Phelps for attorneys' fees, pre-award interest, and other remedies to the fullest extent permissible under applicable law.

## COUNT IV
### (Injunctive Relief)

70.    H&R Block adopts and incorporates all of its preceding allegations as if fully set forth herein.

71.    Injunctive relief is necessary to maintain the status quo of the parties pending final resolution of disputes between the parties pursuant to the arbitration provisions of the Agreement.   The Agreement expressly permits the filing of claims in court for temporary or preliminary injunctive relief "for maintenance of the status quo pending arbitration." *See* Ex. 1, § 17(c).

72.    H&R Block, in an effort to mitigate its damages, seeks entry of a preliminary and permanent injunction enjoining Phelps, and those acting in concert with him, from violating the terms of the Agreement and from misappropriating trade secrets.   There is no adequate remedy at law to prevent Phelps's wrongful conduct, unless Phelps is enjoined from continuing his wrongful conduct.

73.    There is a substantial likelihood that H&R Block will prevail on the merits of this action.

74.    H&R Block has suffered and will continue to suffer irreparable injury if injunctive relief is not granted, and the actual and threatened injury to H&R Block

outweighs any potential injury to Phelps, who has no legal right or justification to breach the Agreement.

75.     The granting of injunctive relief will serve the public interest in enforcing the contractual rights of parties, and in limiting the extent of damages H&R Block will incur as a result of Phelps's continued contractual breaches.

WHEREFORE, H&R Block demands that the Court:

A.     Enter an injunction restraining Phelps and those in active concert or participating with him from:

1)     directly or indirectly contacting or soliciting H&R Block Company Clients (as defined in the Agreement) for the purpose of providing any of the following services: (a) preparing tax returns, (b) filing tax returns electronically, or (c) providing bookkeeping or any other alternative or additional service that H&R Block provides;

2)     providing any of the following services to any of H&R Block's Company Clients: (a) preparation of tax returns, (b) filing tax returns electronically, or (c) providing bookkeeping or any other alternative or additional service that H&R Block provides;

3)     using or disclosing confidential or proprietary information or any trade secrets of H&R Block, including client names and data;

4)     retaining or failing to return to H&R Block any personal property, documents, electronic files, and confidential or proprietary information of H&R Block or regarding H&R Block's clients or business relationships, including any and all copies thereof; and

5)     otherwise breaching his contractual duties to H&R Block, or facilitating such breaches.

B.    Following issuance of a preliminary injunction, enter a stay of this action pending arbitration seeking monetary damages and a permanent injunction;

C.    Enter an order awarding H&R Block its court costs, and reasonable attorneys' fees and expenses; and

D.    Order such other or further relief as the Court deems just and proper.

Date: November 8, 2023.

Respectfully submitted,

_/s/ Dennis M. McClelland_____
Dennis M. McClelland
  Florida Bar No. 0091758
Julie A. Girard
  Florida Bar No. 0124372
PHELPS DUNBAR LLP
100 South Ashley Drive, Suite 2000
Tampa, Florida  33602-5315
Telephone:  813-472-7550
Facsimile:  813-472-7570
dennis.mcclelland@phelps.com
julie.girard@phelps.com

Attorneys for Plaintiff HRB Resources LLC

## **VERIFICATION**

I, Amber Howell, being duly sworn, state that I am employed as the District General Manager for the Block Advisors South East District, that I have read the foregoing Verified Complaint for Injunctive Relief and Damages, and that the statements contained therein are true and accurate to the best of my knowledge, information, and belief.

_____
Amber Howell

Subscribed and sworn to before me this ___7___ day of November 2023.

The foregoing instrument was acknowledged before me via
☒ physical presence      OR      ☐ online notarizations
this _7_ day of _November_, 20 _23_.
By _Amber Howell_
Personally known ___ OR Produced Identification __X__
Type of identification produced _FL Drivers License_
_H400-003-74-863-0_



NOTARY PUBLIC

My Commission Expires: _8/14/2027_

TRISTAN AVERY-CYR ROBINSON
Commission # HH 433214
Expires August 14, 2027

PD.43572181.1